**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MARCOS GARCIA,

                              Petitioner,

        - v -                                        Civ. No. 9:08-CV-0736
                                                          (LEK/RFT)
PAUL ANNETTS, *Superintendent*,

                              Respondent.

**APPEARANCES:**                           **OF COUNSEL:**

MARCOS GARCIA
04-A-5336
Petitioner, *Pro Se*
Downstate Correctional Facility
Box F
Fishkill, NY 12524

HON. ERIC T. SCHNEIDERMAN              ELAINE L. BLOCK, ESQ.
New York State Attorney General        THOMAS B. LITSKY, ESQ.
Attorney for Respondent                Assistant Attorney Generals
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

        Petitioner Marcos Garcia, acting *pro se*, commenced this action seeking *habeas corpus* relief

pursuant to 28 U.S.C. § 2254, alleging that his present confinement in state custody is in violation

of his federal constitutional rights.  Garcia asserts the following grounds in support of his Petition:

(1) his right to a speedy trial was violated; (2) he received ineffective assistance of trial counsel; and

(3) his imposed sentence was harsh and excessive.  Dkt. No. 1, Pet.  For the reasons set forth below,

this Court recommends that Garcia's Petition be **denied**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Pursuant to verdict rendered at the conclusion of a jury trial in the New York State Supreme Court, Rensselaer County, the Honorable Paul Czajka entered a judgment on June 17, 2004, convicting Petitioner of two counts of Criminal Sale of a Controlled Substance in the Second Degree (N.Y. PENAL LAW § 220.41(1)) and two counts of Criminal Possession of a Controlled Substance in the Third Degree (N.Y. PENAL LAW § 220.16(12)). *See* Dkt. No. 11, State Court R. [hereinafter "R."], Trial Tr., at pp. 469-72. The following testimony was adduced at trial.

At approximately 9:35 p.m., on November 20, 2001, Joseph McCarthy, who was working as an undercover police officer with the Community Narcotics Enforcement Team of Troy, New York, drove to Cumberland Farms where a confidential informant named Chance Stephenson had arranged for the officer to meet Petitioner and purchase cocaine from him. *Id.* at pp. 265-66, 267-68, 346-47, & 349. In the parking lot, Petitioner handed McCarthy a plastic bag containing a white, chunky powder and McCarthy gave Petitioner $800. *Id.* at pp. 349-50. McCarthy stated at trial that he did not arrest Petitioner then because that "would have jeopardized the case and the investigation that was ongoing at that time." *Id.* at p. 355. Forensic analysis confirmed the powder weighed 25.9 grams and contained cocaine. *Id.* at p. 186.

At around 9:14 p.m., on April 9, 2002, Officer McCarthy drove with Stephenson to a Price Chopper grocery store parking lot to again purchase cocaine from Petitioner. *Id.* at pp. 355-57. Stephenson walked over to Petitioner's car and McCarthy watched Petitioner hand Stephenson a white paper napkin wrapped around what appeared to be cocaine. *Id.* at pp. 357-58. Stephenson handed the cocaine to McCarthy, who handed Stephenson $400 which was then given to Petitioner. *Id.* at p. 358. The substance was confirmed to weigh 9.5 grams and to be cocaine. *Id.* at pp. 211 &

214.

On July 11, 2002, McCarthy, using a recorded line, called Petitioner's cell phone number in order to arrange another meeting. *Id.* at pp. 367-68. They met in the parking lot of Kennedy's Fried Chicken at approximately 4:32 p.m., where Petitioner handed McCarthy a red, white and blue cup that contained a powder, and McCarthy gave him $880 in return. *Id.* at p. 373. Laboratory analysis confirmed that the powder contained cocaine, lidocaine and caffeine, and weighed 28.1 grams. *Id.* at pp. 219 & 223.

Garcia was arrested on November 27, 2002. Pet. at ¶ 22(2). His trial commenced on June 10, 2004, and on June 17, 2004, a jury found Petitioner guilty of two counts of Criminal Sale of a Controlled Substance in the Second Degree and two counts of Criminal Possession of a Controlled Substance in the Third Degree relating to the November 2001 and July 2002 sales. Petitioner was found not guilty of Criminal Sale of a Controlled Substance in the Third Degree regarding the April 2002 sale. Trial Tr. at pp. 469-72. Subsequently, Petitioner filed a *pro se* New York Criminal Procedure Law ("C.P.L.") § 330.30 motion sometime before August 6, 2004, seeking to set aside the verdict on the ground that his trial counsel, Michael Mansion, Esq., had provided deficient representation by waiving Petitioner's rights to a speedy trial without his consent or knowledge. Dkt. No. 10-3, R., Ex. B. On September 2, 2004, the Rensselaer County Court denied the motion on the basis that the question of Petitioner's consent was not a matter of record.[1] Dkt. No. 10-4, R., Ex. C. On September 24, 2004, the court sentenced Petitioner to consecutive, indeterminate terms of seven and one-half years to life imprisonment for each of the two counts of Criminal Sale of a

---

[1] C.P.L. § 330.30(1) provides the avenue for setting aside or modifying a verdict where there exists a "ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law."

*-3-*

Controlled Substance in the Second Degree, and to consecutive, indeterminate terms of seven to twenty-one years' imprisonment for each of the two counts of Criminal Possession of a Controlled Substance in the Third Degree; both terms to be served concurrently.  Dkt. No. 11-6, R., Sentencing Tr., dated Sept. 24, 2004, at pp. 12-13.

On October 5, 2004, Petitioner moved, *pro se*, to vacate the judgment pursuant to C.P.L. § 440.10.[2]  He again claimed that Mansion had provided deficient representation by waiving Petitioner's rights to a speedy trial.  Dkt. No. 10-5, R., Ex. D.  On January 10, 2005, the trial court denied the § 440.10 motion, holding that sufficient facts appeared on the record to permit review of the claim on direct appeal.[3]  Dkt. No. 10-7, R., Ex. F.  Petitioner, through his appellate counsel Eugene P. Grimmick, Esq.,[4] also filed a direct appeal to the trial court's determination to the New York State Appellate Division, Third Judicial Department.  In it, Petitioner claimed that the prosecution violated a pretrial *Molineux* ruling,[5] that the sentence imposed was unduly harsh and excessive, and that the trial court erred in denying the § 440.10 motion.  Dkt. No. 10-10, R., Ex. I. Petitioner concurrently sought leave to appeal the denial of his 440.10 motion to the New York

---

[2] C.P.L. § 440.10, a codification of the writ of *coram nobis*, *see Gordon v. State*, 533 N.Y.S.2d 219, 220 (N.Y. Ct. Cl. 1988), is a motion to vacate a judgment of conviction.  This motion must be denied when "[t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal."  C.P.L. § 440.10(2)(b).

[3] The court also noted that Petitioner waived any C.P.L. § 30.30 claim, which sets the statutory speedy trial limitations that the prosecution must adhere to when charging a criminal defendant, by failing to make a motion prior to the commencement of trial.  Petitioner does not raise any New York statutory speedy trial violation claim in his Petition for *habeas* relief.

[4] Eugene P. Grimmick, Esq., was assigned to represent Petitioner in his "capacity as Special Appellate Counsel for Rensselaer County due to [Petitioner]'s indigency."  Dkt. No. 10-13, R., Ex. L.

[5] *See People v. Molineux*, 61 N.E. 286 (N.Y. 1901).  "The rule of *Molineux* is familiar: Evidence of uncharged crimes is inadmissible where its only purpose is to show bad character or propensity towards crime."  *People v. Arafet*, 920 N.E.2d 919, 921 (N.Y. 2009) (citation omitted).  Petitioner has not repeated his claim of a *Molineux* violation in his Petition for *habeas* relief.

State Appellate Division, Third Judicial Department. Dkt. No. 10-8, R., Ex. G. On March 14, 2005, the Appellate Division granted Petitioner leave to appeal and consolidated Petitioner's appeal from the denial of his § 440.10 motion with his direct appeal. Dkt. No. 10-9, R., Ex. H.

In a decision dated October 19, 2006, the Appellate Division unanimously affirmed Petitioner's judgment of conviction, but remanded Petitioner's case for a hearing on his claim that his counsel was ineffective for waiving his right to a speedy trial. *People v. Garcia*, 822 N.Y.S.2d 322 (N.Y. App. Div., 3d Dep't 2006); Dkt. No. 10-12, R., Ex. K. The Appellate Division declined to disturb Petitioner's sentence, as he "expressed no remorse for his crimes and executed two sales of large quantities of drugs." *People v. Garcia*, 822 N.Y.S.2d at 324.[6] Turning to Petitioner's speedy trial violation claim, the Appellate Division held that Petitioner waived his "statutory speedy trial rights" as a basis for a direct appeal of his conviction by his failure to "make a motion to dismiss the indictment on speedy trial grounds prior to trial." *Id.* The Appellate Division noted, however, that Garcia's "speedy trial rights are relevant . . . to his C.P.L. 440.10 argument alleging ineffective assistance of counsel. A single error of failing to raise a meritorious speedy trial claim is sufficiently egregious to amount to ineffective assistance of counsel." *Id.* (citations omitted). The Appellate Division concluded that "counsel may waive a defendant's unripe speedy trial rights," and that "the record reveals . . . the six-month time period under the 'ready-trial' statute had not elapsed [and] counsel did not waive a ripe speedy trial claim." *Id.* (citing C.P.L. § 30.30 [1](a)). The court stated, though, that the record before them was inadequate to determine whether Garcia's <u>constitutional</u> speedy trial rights were violated. *Id.* at 325. Accordingly, the Appellate Division

---

[6] The Appellate Division also held that the prosecution did not intentionally or deliberately violate the trial court's *Molineux* ruling when one of the prosecution's witnesses referred to unsubstantiated information that Garcia kept a stash of drugs in a rented storage unit, and any prejudice to Garcia resulting from that statement was ameliorated by the trial court's prompt curative instructions. *People v. Garcia*, 822 N.Y.S.2d at 323-24.

remitted the matter to the trial court for a hearing on this singular issue.  *Id.*

On April 6, 2007, Petitioner's counsel Grimmick sought leave to appeal the Appellate Division's decision denying Petitioner's *Molineux* and statutory speedy trial claims to the New York State Court of Appeals.  Dkt. No. 10-13, R., Ex. L.  Petitioner did not request review of the denial of his excessive sentence claim.  The prosecution opposed Petitioner's application, Dkt. No. 10-14, R., Ex. M, and on June 28, 2007, the New York Court of Appeals denied Petitioner's leave application, Dkt. No. 10-15, R., Ex. N; *People v. Garcia*,  872 N.E.2d 883 (N.Y. 2007).

On February 23, 2007, the Rensselaer County Court conducted the hearing as directed.  Julio Hernandez, Esq., who Petitioner initially had retained after his arrest to represent him in his criminal case, testified that he waived, with Petitioner's consent, Petitioner's right to proceed before a grand jury within forty-five (45) days from his arrest under C.P.L. § 180.50 in order to negotiate a possible plea agreement, but he did not waive Petitioner's constitutional right to a speedy trial.  Dkt. No. 11-8, R., Hr'g Tr., dated Feb. 23, 2007, at pp. 31, 33, 36-37 & 83-84.[7]

On April 10, 2003, Petitioner replaced Hernandez as his trial counsel with Michael Mansion. *Id.* at pp. 31 & 39.  Shortly after assuming the representation of Petitioner, Mansion received notice that Petitioner's case was scheduled to be presented to the grand jury on May 1, 2003.  *Id.* at p. 39; Dkt. No. 10-15, R., Ex. O.  Mansion testified that Petitioner initially wanted to appear before the Grand Jury, but that after discussing with the prosecution the strength of the case against Garcia and the existence of uncharged crimes, he believed that it was in Petitioner's best interest to waive his speedy trial rights and attempt to obtain a favorable pre-indictment plea.  Hr'g Tr. at pp. 39-41 &

---

[7] On at least one occasion, the police met with Petitioner to discuss the possibility of his cooperation by providing them information in return for a favorable plea agreement.  *See* Hr'g Tr. at pp. 64-65 (specifically noting that the police met with Petitioner on January 23, 2003).

43-44.[8]  On April 30, 2003, Mansion sent a letter to the prosecution waiving "any and all speedy trial rights and rights to a timely grand jury presentation pursuant to Criminal Procedure Law sections 30.20, 30.30 and 190.05 et seq.  This waiver is being made upon the ground that my wife is currently under the care of a physician . . . resulting in my extended absence from my office."  Dkt. No. 10-17, R., Ex. P.   On July 21, 2003, Mansion wrote a letter revoking "any previous waiver [o]f [Petitioner's] CPL 180 speedy trial rights submitted by previous counsel on Mr. Garcia's behalf." Dkt. No. 10-18, R., Ex. Q.  Mansion testified at the hearing that this letter was "meant to undue the speedy trial waiver of . . . April 30th" even though the "letter only refers to CPL 180."  Hearing Tr. at pp. 46-47 & 49-50.

    At the hearing, Petitioner testified on his own behalf.  He claimed that he never agreed to waive any speedy trial right and that the passage of time between his arrest and his trial had prejudiced him in asserting his defense.  *Id.* at pp. 76-77.  Specifically, he testified that he attempted to contact Cumberland Farms, Price Chopper, and Kennedy Fried Chicken,[9] the locations of the November 20th, 2001, April 9th, 2002, and July 11th, 2002, drug sales, respectively, but because "too much time had passed," Petitioner either could not secure videotapes of the parking lots, did not receive responses to his inquiries, or the businesses had been "shut down."  *Id.* at pp. 77-80.  He also stated that he hired a private investigator for $3,500, but that the investigator was unable to locate witnesses or records of the numerous trips that Petitioner purportedly made to Puerto Rico during the surveillance period.  *Id.* at pp. 81-82, 87-88.  Besides his own testimony, Petitioner

---

[8] No testimony at the hearing indicates whether Mansion discussed this reasoning with Petitioner or not.

[9] In his testimony, Petitioner referred to the restaurant where the July 11th, 2002 drug sale occurred as "Kentucky Fried Chicken."  Hr'g Tr. at p. 80.  However, the record indicates the actual name of the restaurant was "Kennedy Fried Chicken."  *See id.* at pp. 24, 57; *see also* Dkt. No. 13-2, Resp't Mem. of Law, at p. 18 n.9.

presented no evidence or documents to support his claims.  He also acknowledged that he waived

his right to be indicted within forty-five days, and indicated to his initial attorney, Hernandez, that

he wanted to cooperate with the police to secure a favorable plea offer.  *Id.* at pp. 87-88.  He said

that while he met with law enforcement officers "once or twice" after he switched his trial counsel

to Mansion, he understood that by the time he dismissed Hernandez, "the DA [would] not offer

[him] anything better than six to life" and that he wasn't actively pursuing a better offer because he

"understood [he] didn't have any other option but to go to trial."  *Id.* at pp. 84-86.

After the conclusion of the hearing, Petitioner, through James Edward Gross, Esq., submitted

a memorandum of law to the trial court arguing that there was no evidence of a narcotics

investigation that could establish cause for the delay in his arrest, and that he sufficiently

demonstrated prejudice from this delay at the hearing.  Dkt. No. 10-19, R., Ex. R.  The prosecution

filed a memorandum in opposition.  Dkt. No. 10-20, R., Ex. S.

By a decision and order, dated August 14, 2007, the Judge Czajka denied Petitioner's C.P.L.

§ 440 motion in its entirety.  The court determined that, pursuant to the hearing, the seventeen-month

delay between the first charged drug transaction and Petitioner's eventual arrest was the result of

a clear and documented police investigation that led to several other arrests and prosecutions.  Dkt.

No. 10-22, R., Ex. U, at pp. 3-4.   The trial court also found that the police continued to "obtain and

utilize" Garcia's cooperation "until well after April 30, 2003," the date of Mansion's letter waiving

Petitioner's speedy trial rights.  *Id.* at p. 4.  Lastly, the court found Petitioner's testimony "unworthy

of belief," particularly because he presented no evidence to support his claims that a delay impaired

his defense or prevented him from locating witnesses.  *Id.*

Petitioner, through his counsel Eugene Grimmick, Esq., appealed the county court's decision,

arguing again that there was no ongoing narcotics investigation to justify the delay in Petitioner's arrest, and that the April 30, 2003 speedy trial waiver occurred after Petitioner had validly accrued a constitutional claim and that constitutional violation continued from the date Petitioner's waiver was allegedly revoked, July 21, 2003, until the date of trial, June 10, 2004.  Dkt. No. 10-23, R., Ex. V.[10]

On December 20, 2007, the Appellate Division unanimously affirmed the county court's decision.  *People v. Garcia*, 853 N.Y.S.2d 174 (N.Y. App. Div., 3d Dep't 2007); Dkt. No. 10-24, R., Ex. W.  Considering the extent of, and reason for, the delay, the nature of the underlying charges, and any indications of prejudice to the defense attributable to the delay, the Appellate Division determined that the Petitioner's "attempts to obtain a favorable preindictment plea bargain . . . contributed to the delay following his arrest," and that the prosecution "provided good cause for the delay [in arresting Petitioner] through proof that they sought to maintain the integrity of an ongoing undercover investigation."  *People v. Garcia*, 853 N.Y.S.2d at 175.  Furthermore, because Garcia did not support his allegation of impairment to his criminal defense with any evidence besides his own testimony, "which [the] County Court found less than credible . . . [Petitioner] failed to establish any prejudice due to the delay."  *Id.* at 175-76 (citation omitted).  Therefore, the Appellate Division found that Petitioner's "constitutional speedy trial rights had not been violated as of the time counsel waived those rights.  Because counsel did not give up any existing meritorious rights, the waiver did not constitute ineffective assistance."  *Id.* at 176.  Accordingly, the Appellate Division affirmed the denial of Garcia's entire C.P.L. § 440.10 motion.

---

[10] The prosecution allegedly filed a brief opposing Petitioner's claims on appeal, but according to the Respondent, "[n]either the clerk of the Appellate Division, Third Department nor the Office of the Rensselaer District Attorney has been able to locate this brief."  Dkt. No. 13-2, Resp't Mem. of Law, at p. 20 n.10.

On February 4, 2008, Petitioner requested leave to appeal the Appellate Division's decision to the New York Court of Appeals. Dkt. No. 10-25, R., Ex. X. This request was denied on May 15, 2008. Dkt. No. 10-27, R., Ex. Z. On July 1, 2008, Garcia filed this *Habeas Corpus* Petition pursuant to 28 U.S.C. § 2254. Respondent concedes this Petition has been timely made. Dkt. No. 13-2, Resp't Mem. of Law, at p. 22.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001) (quoting § 2254(e)(1)) (internal quotations

omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief:  1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

## B. In Custody Requirement

According to the New York State Department of Corrections and Community Supervision ("DOCCS") website, on April 4, 2010, Garcia was released from confinement and granted parole. *See* New York State DOCCS, Inmate Population Information Search, *available at* http://nysdocslookup.docs.state.ny.us (last visited April 6, 2011).  Garcia's status as a parolee, however, does not deprive this Court of jurisdiction to entertain his Petition.

The determining consideration for evaluating whether a petitioner meets the "in custody" requirement of the writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254(a), is the petitioner's status on the date his petition was filed.  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  Furthermore, when a state imposes restrictions and conditions on a parolee, the parolee's liberty has been significantly restrained and thus the underlying case or controversy is not moot.  *Defio v. Henderson*, 935 F. Supp. 180, 182 (N.D.N.Y. 1996).

Because Garcia was incarcerated in Downstate Correctional Facility when he filed his Petition, he fulfills the statutory "in custody" requirement, and because, upon information and belief, he is currently on parole and subject to New York State's restrictions, his Petition is not rendered

moot by his conditional release.

### C. Speedy Trial Rights

In his Petition, Garcia alleges that his right to a speedy trial was "significantly violated." Pet. at ¶ 22(2). He appears to assert speedy trial violations from the period of time between the date of his arrest until the date his trial commenced, as well as from the period of time that elapsed between his first drug sale and his eventual arrest. *Id.* Pursuant to the appeal of the county court's finding on the remitted hearing, the Appellate Division rejected this bifurcated claim on its merits. *See People v. Garcia*, 853 N.Y.S.2d at 175-76. In accordance with the AEDPA, we must now determine whether that conclusion constituted an unreasonable application of established federal law.

While recognizing that the Sixth Amendment right to a speedy trial necessitates courts to approach these cases on an *ad hoc* basis, the Supreme Court established a balancing test to guide the eventual determination. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The four factors to be assessed are: 1) length of delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) prejudice to the defendant. *Id.*; *see also United States v. Ray*, 578 F.3d 184, 188-89 (2d Cir. 2009). "No one of these factors, however, is 'either a necessary or sufficient condition to the finding of a deprivation of the right,' and courts must still engage in a sensitive balancing process whereby the conduct of both the prosecution and the defendant are weighed." *Rayborn v. Scully*, 858 F.2d 84, 89 (2d Cir. 1988) (quoting *Barker v. Wingo*, 407 U.S. at 530). However, "the length of the delay 'is to some extent a triggering mechanism'; only if the delay is substantial are the other factors brought into play." *Id.* (quoting *Barker v. Wingo*, 407 U.S. at 530).

In reviewing the hearing on Petitioner's C.P.L. § 440.10 motion regarding the violation of his speedy trial rights and Petitioner's subsequent appeal of the county court's decision, the

Appellate Division determined that Garcia sustained no constitutional speedy trial violation. *People v. Garcia*, 853 N.Y.S.2d at 175-76. The Appellate Division did not cite to *Barker* in its analysis, but rather to *People v. Taranovich*, 335 N.E.2d 303 (N.Y. 1975). In *Taranovich*, the New York Court of Appeals promulgated five factors to ascertain whether a constitutional right to a speedy trial had been violated: 1) the extent of the delay; 2) the reason for the delay; 3) the nature of the underlying charge; 4) whether there has been an extended period of pretrial incarceration; and 5) whether the defense has been impaired by the delay. 335 N.E.2d at 306.[11] As patently clear, *Taranovich*'s factors "essentially mirror the four-part inquiry outlined by the Supreme Court in *Barker v. Wingo*" and, if anything, are more favorable to those who assert a violation. *Smith v. Maher*, 468 F. Supp. 2d 466, 474 (W.D.N.Y. 2006) (citations omitted); *Martinez v. Senkowski*, 2000 WL 33767628, at *9 n.37 (N.D.N.Y. Jan. 7, 2000). Therefore, the Appellate Division's utilization of "the *Taranovich* factors . . . [which] do not contradict the *Barker* factors . . . was not 'contrary to' clearly established federal law as established by the Supreme Court." *Williams v. Mazzuca*, 2007 WL 541699, at *3 (S.D.N.Y. Feb. 20, 2007).

After reviewing the record in its entirety, this Court agrees with the Appellate Division that Petitioner's suffered no constitutional speedy trial violation.

Applying the *Barker* factors, mirrored here in *Taranovich*, we find that the length of the delay was not sufficient to establish a constitutional violation. We turn first to Petitioner's complaint of the time between his first drug deal and his eventual arrest. Initially, we must note that

---

[11] The New York Court of Appeals in *Taranovich* was addressing an alleged violation of C.P.L. § 30.20, which states that "[a]fter a criminal action is commenced, the defendant is entitled to a speedy trial" and is widely understood to embody the federal constitutional right to a speedy trial. *See People v. Taranovich*, 335 N.E.2d at 308 (noting that the "Sixth Amendment speedy trial guarantee was not made applicable to the States until 1967"); *Martinez v. Senkowski*, 2000 WL 33767628, at *9 n.37 (N.D.N.Y. Jan. 7, 2000); *Gibriano v. Attorney Gen. of State of New York*, 965 F. Supp. 489, 491-92 (S.D.N.Y. 1997).

the Sixth Amendment right to a speedy trial applies only to the delay following an indictment or an arrest, and not to an earlier delay. *United States v. Marion*, 404 U.S. 307, 313-15 (1971). Pre-arrest delay may, however, give rise to a constitutional due process claim instead of a speedy trial claim. *Id.* at 313; *United States v. MacDonald*, 456 U.S. 1, 6-7 (1982) (citing *United States v. Lovasco*, 431 U.S. 783, 788-89, 795 (1977) (explaining a delay which prejudices the presentation of a defense and is engaged in for an improper purpose may violate the Due Process Clause as such conduct departs from fundamental notions of "fair play")). New York courts "have never drawn a fine distinction between due process and speedy trial standards," *People v. Singer*, 376 N.E.2d 179, 186 (N.Y. 1978), and, accordingly, the Appellate Division included Garcia's pre-arrest delay in its review of Petitioner's claim. Garcia does not explicitly raise a due process claim in his Petition, but to the extent that claim is triggered by his allegations, it would fail because, as discussed in more depth below, the Appellate Division determined that the prosecution established good cause for the delay and that Petitioner did not establish impairment to his defense. *See People v. Garcia*, 853 N.Y.S.2d at 175-76. Thus, Garcia does not meet the "heavy burden of proving both that he suffered actual prejudice because of the alleged pre-indictment delay *and* that such delay was a course intentionally pursued by the government for an improper purpose." *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999) (emphasis in original). Accordingly, we cannot find Petitioner suffered a due process violation from the delay between his first drug sale and his eventual arrest.

Turning now to the period after Petitioner's arrest, the case law in this Circuit clearly confirms that the five-month delay between Petitioner's arrest and his counsel's April 30, 2003 waiver of his speedy trial rights does not trigger application of the remaining *Barker* factors. *See, e.g.*, *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (noting that courts have generally found

*-14-*

postaccusation delay approaching at least one year to be "presumptively prejudicial," meaning "simply mark[ing] the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry"); *United States v. Marley*, 2006 WL 3544929, at *3 (N.D.N.Y. Dec. 8, 2006) ("Although there is no bright-line standard as to what constitutes a presumptively prejudicial delay, courts generally agree that the threshold is crossed as the delay approaches one year.") (citing *Doggett*).  The Supreme Court, however, has not provided a bright-line rule for this assessment but has explained that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."  *Barker v. Wingo*, 407 U.S. at 531.  Even if considering the entire eighteen to nineteen month period from arrest until trial, and disregarding Petitioner's counsel's waiver and its effects, the amount of delay would not be, alone, extraordinary or *per se* unconstitutional.[12]  In any event, and for the purpose of completeness, we continue our inquest into the other *Barker* factors.

The second factor of the *Barker* inquiry directs reviewing courts  to examine the reason for the delay.  The Appellate Division found that there was "good cause for the delay" between Petitioner's first drug sale and his eventual arrest, as the prosecution provided proof at the hearing that the police were engaged in an "ongoing undercover narcotics investigation," including pen registers, wiretaps, and continuous contact between undercover operatives and Petitioner.  *People v. Garcia*, 853 N.Y.S.2d at 175.  With regards to Petitioner's claims of post-arrest delay, the court

---

[12] In the instant case, the period between Garcia's arrest and the start of trial was approximately eighteen to nineteen months.  The Supreme Court and the Second Circuit have found that no constitutional speedy trial violation existed in cases in which the period between arrest and trial was even longer.  *See, e.g.*, *Barker v. Wingo*, 407 U.S. at 533-34  (over 5 years); *Rayborn v. Scully*, 858 F.2d 84, 89 (2d Cir. 1988) (over 7 years); *United States v. Lane*, 561 F.2d 1075, 1078 (2d Cir. 1977) ("The delay here was quite lengthy approximately 58 months or just under five years but nevertheless was shorter than that in other cases in which no Sixth Amendment violation has been found."); *United States v. Infanti*, 474 F.2d 522, 527 (2d Cir. 1973) ("[T]he length of time from arrest to indictment was 21 months and from arrest to trial 28 months, neither extraordinary."); *United States v. Castrillon-Lopez*, 1992 WL 6184 at *2 (S.D.N.Y. Jan. 3, 1992) (over 5 years).

found that Petitioner's "attempts to obtain a favorable pre-indictment plea bargain . . . contributed to the delay following his arrest." *Id.*  We find nothing in the record to disturb the state court's factual findings.  At the remitted Hearing, investigators testified extensively about their efforts to identify Petitioner's supplier and associates; efforts which actually led to multiple arrests and convictions.  The record before us also indicates that, post-arrest, Petitioner engaged in attempts to obtain a favorable plea bargain and met with investigators in pursuant of that goal.  Petitioner's attorney Mansion testified at the hearing that it was "absolutely" in Petitioner's best interest to obtain a pre-indictment plea, and such was the rationale behind his April 30, 2003 letter waiving Petitioner's speedy trial rights. *See* Hr'g Tr. at pp. 41 & 43-44.  Thus, because the state courts found this testimony believable and afforded it appropriate credit, these findings are entitled to a presumption of correctness in accordance with the AEDPA.  Petitioner does not now bring clear and convincing evidence such that these factual finding should be overturned.

Likewise, the third *Barker* factor, the timeliness of a defendant's assertion of the right, does not weigh in Petitioner's favor.  He first mentioned the issue in a *pro se* bail application dated August 25, 2003, claiming that he did not consent to a waiver of his speedy trial rights during plea negotiations and that he would be making a C.P.L. § 30.30 motion to address the purported violation; a motion Petitioner ultimately never made.  Dkt. No. 10-6, R., Ex. E, at ¶¶ 19-20. Petitioner did not raise the issue again until after the conclusion of his trial, when he filed a *pro se* motion to vacate the conviction, pursuant to C.P.L. § 330.30, on the grounds that his trial counsel, Mansion, had provided deficient representation by waiving Petitioner's rights to a speedy trial without his consent or knowledge.  Dkt. No. 10-3, R., Ex. B.  While a defendant's failure to demand adherence to his speedy trial rights does not constitute a *de facto* waiver of his rights, *see Rayborn*

-16-

*v. Scully*, 858 F.2d 82, 92 (2d Cir. 1988) (citing *Barker v. Wingo*, 407 U.S. at 528), asserting a speedy trial violation only after trial "weighs heavily against" Petitioner.  *See, e.g.*, *United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) (quoting *Barker v. Wingo*, 407 U.S. at 532, for the proposition that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial"); *Dexter v. Artus*, 2007 WL 963204, at *7-8 (N.D.N.Y. Mar. 27, 2007); *see accord United States v. Gonzalez*, 399 Fed. Appx. 641, 644 (2d Cir. 2010) ("The making of [a motion for severance of the case] is important to give notice of a defendant's claim of speedy trial prejudice and to avoid gamesmanship in agreeing to delays that are later challenged.") (citing *Vasquez*).  Thus, Petitioner's failure to assert his speedy trial rights until after his trial was conducted weighs against a finding that his constitutional rights were violated.

Lastly, the final *Barker* factor focuses on the prejudice to a petitioner in establishing his or her defense due to the delay.  The Appellate Division, upon reviewing the hearing, found that Garcia failed to establish any impairment to his defense.  Petitioner testified that he wrote or contacted various businesses – Cumberland Farms, Price Chopper, and Kennedy Fried Chicken – at whose location the Petitioner was charged as having sold illegal narcotics, and that he could not get satisfactory cooperation from these businesses because of the delay.  Petitioner also claimed that he hired a private investigator who was unable to locate witnesses or evidence of Petitioner's purported alibi because of the passage of time.  However, Petitioner failed to offer any documentary evidence of any of these efforts or to present the private investigator at the hearing, and the Appellate Division subsequently determined that these allegations were "unworthy of belief."  We find no hint of evidence in the record that would call the state court's findings into question.

Therefore, after a thorough review of the record, we cannot conclude that Garcia suffered

a constitutional speedy trial violation, either by the amount of time between his first drug sale and arrest, by the amount of time between his arrest and his counsel's waiver of his speedy trial rights, or by the cumulative totality of time between his arrest and the commencement of his trial.  Because, for the above reasons, the Appellate Division's determination of the claim was not an unreasonable application of established federal law, we recommend Petitioner's claim be **denied**.

### D. Ineffective Assistance of Trial Counsel

Garcia alleges in his Petition that he received ineffective assistance from trial counsel Michael Mansion when Mansion waived Garcia's speedy trial rights in a letter to the prosecution dated April 30, 2003.  *See* Pet. at ¶ 22 (1).  Petitioner claims that Mansion waived these rights "without the permission, consultation and awareness of the Petitioner . . . when in fact at that particular junction the [P]etitioner already possessed a meritorious claim to speedy trial."  *Id.*

The Appellate Division addressed this claim, subsequent to the remitted hearing on the "narrow issue of whether [Petitioner]'s constitutional speedy trial rights were violated as of April 30, 2003, when defense counsel waived [Petitioner]'s rights.  If his rights had been violated as of that time, then counsel deprived him of meaningful representation by waiving a meritorious claim and failing to move for dismissal."  *People v. Garcia*, 853 N.Y.S.2d at 175.  The Appellate Division rejected Petitioner's contention by determining, as discussed above, that Petitioner's constitutional speedy trial rights had not been violated at the time Mansion waived those rights, and thus, "[b]ecause counsel did not give up any existing meritorious rights, the waiver did not constitute ineffective assistance."  *Id.* at 176.  In accordance with the AEDPA, this Court must decide whether that state court determination constituted an unreasonable application of clearly established federal law.

To establish ineffective assistance of counsel in violation of the Sixth Amendment, a *habeas* petitioner must show that: 1) his attorney's representation was deficient such that it fell below an objective standard of reasonableness measured by the prevailing professional norms; and 2) this deficient performance prejudiced his defense such that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002) (citing *Strickland v. Washington*, 466 U.S. 668, 688 & 694 (1984)); *see also Aeid v. Bennett*, 296 F.3d 58, 62-63 (2d Cir. 2002); *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997); *Rattray v. Brown*, 261 F. Supp. 2d 149, 157 (E.D.N.Y. 2003).[13]  In determining the reasonableness of counsel's representation, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [legal] strategy.'"  *Strickland v. Washington*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

After reviewing the record before us and the trial transcript in its entirety, this Court agrees with the Appellate Division that Garcia's trial representation did not amount to ineffective assistance of counsel.  As well-established by the Supreme Court, "[w]hat suffices for waiver depends on the nature of the right at issue."  *New York v. Hill*, 528 U.S. 110, 114 (2000).  "[W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake."  *United States v. Olano*, 507 U.S. 725, 733 (1993).  "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the

---

[13] In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]'"  529 U.S. 362, 391 (2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001).

client, the lawyer has – and must have – full authority to manage the conduct of the trial." *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988).  Thus, an attorney, acting without indication of particular consent from his client, can waive his client's speedy trial right, as "[s]cheduling matters are plainly among those [rights] for which agreement by counsel generally controls."  *See Gonzalez v. United States*, 553 U.S. 242, 249 (2008) (citing *New York v. Hill*, 528 U.S. at 115).

Therefore, Mansion's April 30, 2003 letter waiving Petitioner's rights to a speedy trial, even if Mansion was acting without Petitioner's consent or knowledge, does not alone rise to the level of deficient performance.  As a practical necessity, attorneys must have control of trial management matters, for "[t]he adversary process could not function effectively if every tactical decision required client approval."  *Id.* (quoting *Taylor v. Illinois*, 484 U.S. at 418).  Mansion's speedy trial waiver without Petitioner's knowledge thus was not an unreasonable course of action by counsel who undertook Petitioner's representation on April 10, 2003 - only less than a month from May 1, 2003, which was when Petitioner's case was scheduled to appear before a grand jury.  *See* Hr'g Tr. at pp. 41 & 43-44.

This waiver, however, may have amounted to deficient representation if Petitioner's counsel waived a meritorious claim of a violation of Petitioner's speedy trial rights, as recognized by the Appellate Division.  *See People v. Garcia*, 822 N.Y.S.2d 322, 324 (N.Y. App. Div., 3d Dep't 2006) (stating that while "[d]efense counsel may waive a defendant's unripe speedy trial rights . . . [a] single error of failing to raise a meritorious speedy trial claim is sufficiently egregious to amount to ineffective assistance of counsel") & *People v. Garcia*, 853 N.Y.S.2d at 175 ("If his rights had been violated as of that time [of the waiver], then counsel deprived him of meaningful representation by waiving a meritorious claim and failing to move for dismissal[.]")  However, as we examined in

the previous section, Petitioner's rights to a speedy trial had not been violated.  "The law in this circuit is clear that when the underlying claims themselves are found to be meritless, the ineffective assistance claim is meritless as well."  *Hall v. Phillips*, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007) (citing *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999)).  Thus, no claim underlying Petitioner's charge of ineffective representation exists, as Petitioner's counsel did not waive a meritorious claim to dismiss based upon a speedy trial violation.

Therefore, we cannot conclude that Garcia's trial counsel's representation or performance was objectively unreasonable.  As such, we need not discuss *Strickland*'s second inquiry of whether the deficient performance actually prejudiced the Petitioner.  Because, for the above reasons, the Appellate Division's determination of this claim was not an unreasonable application of established federal law, we recommend Petitioner's ineffective assistance of trial counsel claim be **denied**.

### E. Harsh and Excessive Penalty

In his third and final claim, Petitioner complains that the sentence imposed pursuant to his criminal trial was harsh and excessive.  Specifically, Garcia claims that "the fact that . . . the [P]etitioner is a first time felon, [and that] the [P]etitioner has no real criminal history" was not properly considered in his sentencing.  Pet. at § 22 (3).  For the following reasons, Petitioner's claim is unexhausted, moot, and, additionally, not cognizable on *habeas* review.

Prior to seeking federal *habeas* relief, a petitioner must exhaust available state remedies, or demonstrate that there is either an absence of available state remedies or that such remedies cannot adequately protect petitioner's rights.[14]  *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting

---

[14] 28 U.S.C. § 2254(b) and (c) provide, in part, as follows:

(b)(1) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant

(continued...)

28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994).  This exhaustion

requirement recognizes "respect for our dual judicial system and concern for harmonious relations

between the two adjudicatory institutions."  *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191

(2d Cir. 1982).  Though both federal and state courts are charged with securing a state criminal

defendant's federal rights, the state courts must initially be given the opportunity to consider and

correct any violations of federal law.  *Id.*  Thus, the writ of *habeas corpus* requires that petitioners

"fairly present[]" their claims to the state courts before the federal system can issue the writ.  *See*

*Jimenez v. Walker*, 458 F.3d 130, 148-49 (2d Cir. 2006); *see also Coleman v. Thompson*, 501 U.S.

722, 731 (1991) (noting the exhaustion requirement, codified at 28 U.S.C. § 2254(b)(1), is

"grounded in principles of comity; in a federal system, the States should have the first opportunity

to address and correct alleged violations of [a] state prisoner's federal rights.").   "The chief

purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on

a claim whose fundamental legal basis was substantially different from that asserted in state court."

*Glover v. Bennett*, 1998 WL 278272, at *1  (N.D.N.Y. May 21, 1998) (quoting *Daye v. Attorney*

*Gen. of New York*, 696 F.2d at 192).[15]

Petitioner first raised an excessive sentence claim on his direct appeal.  *See* Dkt. No. 10-10,

---

[14](...continued)
to the judgment of a State court shall not be granted unless it appears that: (A) the applicant has
exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available
State corrective process; or (ii) circumstances exist that render such process ineffective to protect the
rights of the applicant. . . .
        (c) An applicant shall not be deemed to have exhausted the remedies available in the courts
of the State, within the meaning of this section, if he has the right under the law of the State to raise,
by any available procedure, the question presented.

[15] Because the AEDPA's restriction on federal *habeas* power was premised upon the duty of state courts to
uphold the Constitution and faithfully apply federal laws, the AEDPA's review standards apply only to federal claims
which have been actually adjudicated on the merits in the state court.  *Washington v. Shriver*, 255 F.3d 45, 52-55 (2d
Cir. 2001).  Accordingly, deference is not mandated under section 2254(d) if a state court decides the case on a
procedural basis, rather than on the merits.  *See Sellan v. Kuhlman*, 261 F.3d 303, 309-10 (2d Cir. 2001).

R., Ex. I., at pp. 21-26.  Petitioner did not, however, include this excessive sentence claim in his application for leave to appeal to the New York Court of Appeals; rather, Petitioner requested review only of the Appellate Division's rejection of his *Molineux* and ineffective assistance of counsel claims.  *See* Dkt. No. 10-13, Ex. L.  Hence, Petitioner's excessive sentence claim was not presented to the highest state court from which relief could be granted, and therefore Petitioner did not exhaust his state remedies.  *See Daye v. Attorney General of New York*, 696 F.2d at 190 n.3 (citing 28 U.S.C. §§ 2254(b) & (c), the latter of which states, "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has a right under the law of the State to raise, by any available procedure, the question presented"); *see also Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (finding a petitioner's failure to specifically raise sentencing and prosecutorial misconduct claims before the New York Court of Appeals to mean those claims now raised in federal habeas petition are unexhausted).

Although a federal court may not grant a writ of *habeas corpus* on a claim that has not been exhausted, the court has the discretion to deny such a petition.  *See* 28 U.S.C. § 2254(b)(2);  *see also Marziale v. Walker*, 2000 WL 33767753, at *3 (N.D.N.Y. May 4, 2000).  Additionally, the Supreme Court has held that when a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," federal courts on *habeas* review must also deem the claim procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. at 735 n.1 (quoted in *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003)).  In other words, "[a]n unexhausted claim that can no longer be exhausted is deemed procedurally defaulted."  *Andrews v. Downstate Corr. Facility*, 2009 WL 3587280, at *2 (E.D.N.Y. Oct. 27, 2009) (citing *Aparicio v. Artuz*, 269 F.3d at 90).

*-23-*

This Court finds that Petitioner's excessive sentence claim could have been raised in his application for leave to appeal to the New York Court of Appeals. Petitioner has not offered a reason, and we see none, that suggests a collateral proceeding or new evidentiary hearing is needed to develop his claim that the sentence was harsh and excessive. Furthermore, Petitioner cannot now file a second state court appeal as to this claim because a criminal defendant is "entitled to one (and only one) appeal." *Aparicio v. Artuz*, 269 F.3d at 91. Therefore, this claim is deemed exhausted but procedurally barred for purposes of his *habeas* application.

In any event, Petitioner's excessive sentence claim, with regard to the sentences imposed for Petitioner's convictions of Criminal Sale of a Controlled Substance, is moot. Upon Petitioner's motion, he was resentenced on March 21, 2008, pursuant to the Drug Law Reform Act of 2004 (N.Y. PENAL LAW § 70.71), to concurrent and determinate terms of ten years for each of his two counts of Criminal Sale of a Controlled Substance in the Second Degree, followed by five years of post-release supervision, replacing his indeterminate terms of seven and one-half years to life imprisonment. *See* Dkt. No. 10-2, R., Ex. A; Pet. at ¶ 23; Dkt. No. 12, Resentencing Tr., dated March 21, 2008, at pp. 18-19. Petitioner's consecutive sentences of seven to twenty-one years for each of the two counts of Criminal Possession of a Controlled Substance in the Third Degree were undisturbed. *See* Pet. at ¶ 23. In his Petition, filed in July of 2008 – subsequent to his resentencing – Garcia expressly directs his excessive sentence claim to the sentence that was originally imposed, and does not challenge the amended sentence he received on March 21, 2008. Pet. at ¶¶ 22(3) & 24. Therefore, because the original sentences Petitioner was exposed to no longer exist pursuant to resentencing, Petitioner has nothing to challenge and his claim is thus moot.

Alternatively, even if this Court imputes Petitioner's harsh and excess penalty claim as

challenging his current sentence, which he received after resentencing, this claim would be both unexhausted, because Petitioner did not appeal the new sentence handed down at his rehearing in any state court, and not cognizable on *habeas* review, because it alleges a violation of state law only.

When a petitioner's sentence is within the statutory range of the corresponding crime he was convicted of, no federal constitutional issue cognizable on *habeas* review is presented.  *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."); *see also Garrett v. Smith*, 2006 WL 2265094, at *12 (E.D.N.Y. Aug. 8, 2006) ("It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law.") (quoting *White*, 969 F.2d at 1383).   In New York, a conviction of Criminal Possession of a Controlled Substance in the Third Degree, which is classified as a class B felony, can range from an indeterminate maximum prison sentence of three to twenty-five years on each count, and a minimum term of at least one year and no more than one-third of the maximum term imposed.  N.Y. PENAL LAW §§ 70.00(2)(b) & (3)(b).  Thus, Petitioner's prison sentence of from seven to twenty-one years is within the range prescribed by New York State law.  The same rationale applies to Petitioner's sentence corresponding to Criminal Sale of a Controlled Substance in the Second Degree, which is a class A-II felony carrying life imprisonment as a maximum term of sentence.[16] *See* N.Y. PENAL LAW §§ 70.00(2)(a) & 3(a)(ii).  Petitioner's excessive sentence claim, even if read to apply to his amended sentence, is not cognizable on *habeas* review.

Therefore, for the above reasons, Petitioner's claim that his penalty is harsh and excessive

---

[16] Hypothetically, if the Petitioner never had his sentence reduced pursuant to a hearing under the Drug Law Reform Act of 2004, his original sentence of seven and one-half years to life for each of his convictions of Criminal Sale of a Controlled Substance, as well as the reduction he received to two determinate ten year sentence, would have been deemed non-cognizable by the same reasoning.  *See* N.Y. PENAL LAW §§ 70.00(2)(a) & 3(a)(ii).

should be **denied**.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied* 531 U.S. 873 (2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).


Date:   September 1, 2011
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge